J-S27006-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| EDMOND J. CALLOWAY | : | |
| | : | |
| Appellant | : | No. 2895 EDA 2016 |

Appeal from the PCRA Order August 18, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0509401-1995,
CP-51-CR-0509411-1995

BEFORE:  GANTMAN, P.J., OTT, J., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:                **FILED JUNE 01, 2017**

Appellant, Edmond J. Calloway, appeals from the order entered in the Philadelphia County Court of Common Pleas, which denied his third petition brought pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

A prior memorandum of this Court sets forth the relevant facts of this case as follows:

> Appellant's convictions [arose] out of an incident in which he beat [Victim 1] with a baseball bat and shot and killed…[Victim 2].  …  [O]n [April 8, 1995], Appellant went to a speakeasy in search of [Victim 2], where, upon arrival, he repeatedly struck [Victim 1] with a baseball bat, rendering him unconscious.  Appellant then demanded to

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

_____

*Retired Senior Judge assigned to the Superior Court.

know [Victim 2]'s whereabouts. Shortly thereafter, when [Victim 2] approached the speakeasy in his car, Appellant fired three shots into the vehicle, causing [Victim 2] to crash. Appellant then ran up to the automobile and fired three shots inside. … Appellant's trial commenced on April 2, 1996. On April 4, 1996, a jury found Appellant guilty of first-degree murder, possessing instruments of crime, and aggravated assault.

*Commonwealth v. Calloway*, 715 A.2d 500 (Pa.Super. 1998) (unpublished memorandum). On April 4, 1996, the court sentenced Appellant to life in prison without the possibility of parole for first-degree murder. The court imposed a term of seven to fourteen years' incarceration for aggravated assault, consecutive to the life sentence. This Court affirmed the judgment of sentence on March 23, 1998.

The PCRA court opinion sets forth additional procedural history of this case as follows:

On June 4, 1999, [Appellant] filed a *pro se* Motion for Post-Conviction Collateral Relief pursuant to the [PCRA]. [PCRA counsel] was appointed to represent [Appellant], and determined that [Appellant]'s claims were without arguable merit and there were no additional issues to be raised. [PCRA counsel] then filed [on January 31, 2003,] a "no merit" letter pursuant to *Commonwealth v. Finley*, 550 A.2d 213, 215 (Pa.Super. 1988) (*en banc*). On April 11, 2003, the PCRA [c]ourt dismissed [Appellant]'s [f]irst [p]etition and permitted PCRA counsel to withdraw. [Appellant] appealed the dismissal of his [f]irst [PCRA] [p]etition, and the Superior Court affirmed the PCRA [c]ourt's dismissal on October 1, 2004.

(PCRA Court Opinion, filed August 17, 2016, at 2). In his "no merit" letter, PCRA counsel explained that Appellant said Jacqueline Davis might have been able to provide exculpatory testimony. PCRA counsel added that,

despite his repeated attempts to contact her, Ms. Davis refused to speak with him.

The PCRA court opinion continues:

> [Appellant] filed his second *pro se* Motion for Post-Conviction Collateral relief…on November 10, 2009. In a memorandum attached to the [s]econd [PCRA] [p]etition…, [Appellant] alleged that after-discovered [facts], in the form of new exculpatory eyewitness Jacqueline Davis, proved he did not commit either the aggravated assault or the murder of which he was convicted. [Appellant] did not, however, submit an affidavit or witness certification from Ms. Davis, but instead relied on two witnesses who claimed to have spoken with her and heard her exculpatory statements. … On February 3, 2012, [the] [PCRA] [c]ourt dismissed [Appellant]'s [s]econd [PCRA] [p]etition…, on the ground that it was untimely filed. [T]he Superior Court affirmed the PCRA [c]ourt's dismissal on December 5, 2012, holding that inadmissible hearsay evidence could not form the basis for an exception to the PCRA's time-bar requirements. …
>
> [Appellant] filed his third *pro se* Motion for Post-Conviction Collateral Relief, here at issue, on October 18, 2013. [Appellant] again asserted that after-discovered [facts], specifically the testimony of Ms. Davis, proved he did not commit either the aggravated assault or the murder of which he was convicted. This time, [Appellant] included an affidavit from Ms. Davis. [PCRA counsel] was appointed to represent [Appellant] on June 3, 2014. On January 8, 2015, [PCRA] counsel filed an Amended [PCRA] Petition…, asserting that Ms. Davis, now available to testify in person, would provide newly discovered [facts] proving [Appellant]'s innocence.
>
> The [PCRA] [c]ourt held a hearing to address the newly discovered [facts] issue on October 20, 2015.
>
> \* \* \*
>
> At the evidentiary hearing, [Appellant] testified on his own

- 3 -

behalf and presented the testimony of Jacqueline Davis. The Commonwealth presented the testimony of Mary Ann Hill, the wife of [Victim 2], and a stipulation regarding certain records of the parole agent for Ms. Davis.

*Id.* at 2-5 (internal citations to record omitted).

On August 18, 2016, the PCRA court dismissed Appellant's PCRA petition. Appellant timely filed a notice of appeal on September 9, 2016. The PCRA court, on September 13, 2016, ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b); Appellant timely complied on October 4, 2016.

Appellant raises one issue for our review:

DID THE PCRA COURT ERR WHEN IT DETERMINED THAT [APPELLANT] WAS NOT ENTITLED TO PCRA RELIEF?

(Appellant's Brief at 3).

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. *Commonwealth v. Conway*, 14 A.3d 101 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. *Commonwealth v. Boyd*, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We give no such deference, however, to the court's legal conclusions. *Commonwealth v. Ford*, 44 A.3d 1190 (Pa.Super. 2012). Traditionally, credibility issues are resolved by

the trier of fact who had the opportunity to observe the witnesses' demeanor. ***Commonwealth v. Abu-Jamal***, 553 Pa. 485, 720 A.2d 79 (1998), *cert. denied*, 528 U.S. 810, 120 S.Ct. 41, 145 L.Ed.2d 38 (1999). Where the record supports the PCRA court's credibility resolutions, they are binding on this Court. ***Id.***

A PCRA petition, including a second or subsequent petition, shall be filed within one year of the date the underlying judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment is deemed final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3).

The three statutory exceptions to the timeliness provisions in the PCRA allow for very limited circumstances under which the late filing of a petition will be excused. 42 Pa.C.S.A. § 9545(b)(1). To invoke an exception, a petition must allege and the petitioner must prove:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to

apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). Additionally, a PCRA petitioner must present his claimed exception within sixty days of the date the claim first could have been presented. 42 Pa.C.S.A. § 9545(b)(2). "As such, when a PCRA petition is not filed within one year of the expiration of direct review, or not eligible for one of the three limited exceptions, or entitled to one of the exceptions, but not filed within 60 days of the date that the claim could have been first brought, the [PCRA] court has no power to address the substantive merits of a petitioner's PCRA claims." **Commonwealth v. Gamboa-Taylor**, 562 Pa. 70, 77, 753 A.2d 780, 783 (2000).

The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. **Commonwealth v. Bennett**, 593 Pa. 382, 395, 930 A.2d 1264, 1271 (2007). Due diligence demands that the petitioner take reasonable steps to protect his own interests. **Commonwealth v. Carr**, 768 A.2d 1164, 1168 (Pa.Super. 2001). A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. **Commonwealth v. Breakiron**, 566 Pa. 323, 330-31, 781 A.2d 94, 98 (2001); **Commonwealth v. Monaco**, 996 A.2d 1076, 1080 (Pa.Super 2010), *appeal denied*, 610 Pa. 607, 20 A.3d 1210 (2011). This rule is strictly enforced. **Id.** Additionally, the focus of this exception "is on the

newly discovered **facts**, not on a newly discovered or newly willing source for previously known facts." ***Commonwealth v. Marshall***, 596 Pa. 587, 596, 947 A.2d 714, 720 (2008) (emphasis in original). In other words, the "new facts" exception at:

> [S]ubsection (b)(1)(ii) has two components, which must be alleged and proved. Namely, the petitioner must establish that: 1) the **facts** upon which the claim was predicated were **unknown** and 2) could not have been ascertained by the exercise of **due diligence**. If the petitioner alleges and proves these two components, then the PCRA court has jurisdiction over the claim under this subsection.

***Bennett, supra*** at 395, 930 A.2d at 1272 (internal citations omitted) (emphasis in original). Thus, the "new facts" exception at Section 9545(b)(1)(ii) does not require any merits analysis of an underlying after-discovered-evidence claim.[2] ***Id.*** at 395, 930 A.2d at 1271.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Glenn B. Bronson, we conclude Appellant's issue merits no relief. The PCRA court

---

[2] To obtain relief on a substantive after-discovered-evidence claim under the PCRA, a petitioner must demonstrate: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. ***See, e.g., Commonwealth v. Washington***, 592 Pa. 698, 927 A.2d 586 (2007); ***Commonwealth v. D'Amato***, 579 Pa. 490, 856 A.2d 806 (2004). The substantive merits-based analysis is more stringent than the analysis required by the "new facts" exception to establish jurisdiction. ***See Bennett, supra*** at 395-96, 930 A.2d at 1271-72.

opinion comprehensively discusses and properly disposes of the question presented. (*See* PCRA Court Opinion, filed August 17, 2016, at 5-9) (finding: Appellant's PCRA hearing testimony was incredible; Appellant knew before trial that Jacqueline Davis was potential witness because Ms. Davis was with Appellant at speakeasy on night of incident; also, Appellant knew that Ms. Davis could provide potentially exculpatory testimony as early as 2003, when first PCRA counsel stated in his "no merit" letter that Ms. Davis was possible eyewitness; Appellant failed to demonstrate he exercised reasonable diligence to obtain Ms. Davis' testimony; Appellant's PCRA petition is time-barred because Appellant failed to prove new-facts exception to PCRA timeliness requirement applied; even if Ms. Davis' testimony qualified as new facts, Appellant's PCRA petition merits no relief; credible testimony of Mary Ann Hill established that shortly after incident, Ms. Davis told Ms. Hill she saw Appellant shoot Victim 2; Ms. Davis fabricated statement that she saw another individual shoot Victim 2; additionally, parole agent's records indicate that in 2000, parole agent told Ms. Davis that investigator for Appellant contacted parole agent about information Ms. Davis might have concerning incident; parole agent's records establish Ms. Davis told parole agent she did not remember incident and did not want to talk to investigator; Ms. Davis' falsely testified that her parole agent advised her not to speak about incident; Ms. Davis' testimony at PCRA hearing was incredible; thus, Appellant could not demonstrate that if Ms. Davis had

testified at trial, there is reasonable probability that outcome of trial would have differed). The record supports the PCRA court's rationale. Accordingly, we affirm on the basis of the PCRA court opinion.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/1/2017

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF             :        CP-51-CR-0509401-1995
PENNSYLVANIA               :        CP-51-CR-0509411-1995
                          :
                          :        **FILED**
    v.                    :
                          :
EDMOND CALLOWAY           :        AUG 17 2016

                OPINION AND ORDER          Appeals/Post Trial
                                          Office of Judicial Records

            CP-51-CR-0509401-1995 Comm. v. Calloway, Edmond
                         Opinion

BRONSON, J.                           August 17, 2016

                      7487551921

Presently before the Court is the petition of defendant Edmond Calloway under the Post

Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46. This PCRA court held an

evidentiary hearing and now renders findings of fact and conclusions of law regarding

defendant's claim. For the reasons set forth below, the Court finds that the petition is untimely

and that the claim raised by defendant is without merit. For those reasons, the Court orders that

defendant's PCRA petition be dismissed.

## I.  PROCEDURAL HISTORY

On April 4, 1996, following a jury trial before the Honorable James Lineberger,

defendant Edmond Calloway was convicted of one count of murder of the first degree (18

Pa.C.S. § 2502(a)), one count of aggravated assault (18 Pa.C.S. § 3702), and two counts of

possessing an instrument of crime ("PIC") (18 Pa.C.S. § 907(a)).[1] Defendant was immediately

sentenced to life imprisonment for the murder charge (18 Pa.C.S. § 1102(a)(1)). Further

sentencing was deferred to September 5, 1996, at which time defendant was sentenced to seven

---

[1] Defendant was initially tried in front of Judge Lineberger in March 1996, which resulted in a mistrial following
evidence of witness tampering. In particular, Commonwealth witness Tammy Wilder testified that defendant's
cousin "Ed" offered her money to recant her identification of defendant as the shooter.



to fourteen years imprisonment for the aggravated assault charge, to run consecutive to the life sentence. No further penalty was imposed on the PIC charges. Defendant was represented at trial by Geoffrey Seay, Esquire.

Defendant was represented on direct appeal by Yung W. Lee, Esquire, who filed a timely notice of appeal to Superior Court on October 4, 1996. The trial court filed its 1925(a) Opinion on February 7, 1997. On March 23, 1998, the Superior Court affirmed defendant's judgment of sentence. Defendant did not seek further direct appellate review. The judgment of sentence became final 30 days later, on April 22, 1998.

On June 4, 1999, defendant filed a *pro se* Motion for Post-Conviction Collateral Relief pursuant to the Post-Conviction Relief Act ("PCRA") ("First Petition"). Jeffrey Minehart, Esquire, was appointed to represent defendant, and determined that defendant's claims were without arguable merit and there were no additional issues to be raised. Mr. Minehart then filed a "no merit" letter pursuant to *Commonwealth v. Finley*, 550 A.2d 213, 215 (Pa. Super. 1988) *(en banc)*. On April 11, 2003, the PCRA Court dismissed defendant's First Petition and permitted PCRA counsel to withdraw. Defendant appealed the dismissal of his First Petition, and the Superior Court affirmed the PCRA Court's dismissal on October 1, 2004. Defendant did not seek further review of that decision.

Defendant filed his second *pro se* Motion for Post-Conviction Collateral Relief ("Second Petition") on November 10, 2009. In a memorandum attached to the Second Petition ("Memorandum in Support of Second Petition"), defendant alleged that after-discovered evidence, in the form of new exculpatory eyewitness Jaqueline Davis, proved he did not commit either the aggravated assault or the murder of which he was convicted. Defendant did not, however, submit an affidavit or witness certification from Ms. Davis, but instead relied on two

2

witnesses who claimed to have spoken with her and heard her exculpatory statements. *See* Memorandum in support of Second Petition at pp. 6-17. Judge Lineberger having retired from the bench, this matter was assigned to Judge Sheila Woods-Skipper, who on September 10, 2010, issued a Notice of Intent to Dismiss defendant's Second Petition, pursuant to Pa.R.Crim.P. 907. Defendant filed a reply to this 907 Notice on September 28, 2010. On June 21, 2011, the Second Petition was reassigned to the undersigned trial judge. On February 3, 2012, this Court dismissed defendant's Second Petition without a hearing, on the ground that it was untimely filed. Defendant appealed the dismissal of his Second Petition, and the Superior Court affirmed the PCRA Court's dismissal on December 5, 2012, holding that inadmissible hearsay evidence could not form the basis for an exception to the PCRA's time-bar requirements. Superior Court Opinion, filed 12/5/12 at pp. 2-3. Defendant did not seek further review of that decision.

Defendant filed his third *pro se* Motion for Post Conviction Collateral Relief, here at issue, on October 18, 2013. Defendant again asserted that after-discovered evidence, specifically the testimony of Ms. Davis, proved he did not commit either the aggravated assault or the murder of which he was convicted. This time, defendant included an affidavit from Ms. Davis. David Rudenstein, Esquire, was appointed to represent defendant on June 3, 2014. On January 8, 2015, defense counsel filed an Amended Post-Conviction Relief Act Petition ("Third Petition"), asserting that Ms. Davis, now available to testify in person, would provide newly discovered evidence proving defendant's innocence.[2]

The Court held a hearing to address the newly discovered evidence issue on October 20, 2015. Post-hearing submissions were received from both parties.

---

[2] The Third Petition also requested that the Commonwealth be ordered to turn over to defendant the statement of one Barbara McCullough, who was allegedly questioned by police about the murder. The Commonwealth represented that it had no such statement and defendant withdrew that request.

3

## I. FACTUAL BACKGROUND

The facts of this case are summarized in Judge Lineberger's 1925(a) opinion regarding defendant's direct appeal. *See* Trial Court Opinion, filed 2/7/1997 at pp. 2-4.

## II. ANALYSIS

Defendant's PCRA claim is premised upon the availability of newly discovered evidence. A defendant may be eligible for relief under the PCRA where the defendant pleads and proves by a preponderance of the evidence "the unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(2)(vi); *Commonwealth v. Lambert*, 765 A.2d 306 , 324-25 (Pa. Super. 2000). The PCRA court must be satisfied that the evidence could not have been obtained by reasonable diligence, is not cumulative, does not merely impeach credibility, and that it would likely compel a different result. *Lambert*, 765 A.2d at 324-25.

Defendant claims in his Third Petition that Ms. Davis provided a statement on August 31, 2013, in which she asserted that she saw defendant near the car where the victim in this case was killed, but that defendant was not the shooter. Third Petition at ¶ 12; Letter Brief in support of defendant's Third Petition ("Letter Brief") at p. 6. Defendant contends that since Ms. Davis had not previously provided a statement in this matter, and that since the Third Petition was filed within 60 days of that statement, the statement qualified as newly discovered evidence within the meaning of the applicable exception to the PCRA time-bar. Third Petition at ¶ 12.

A. *Evidence Presented at the Evidentiary Hearing*

At the evidentiary hearing, defendant testified on his own behalf and presented the testimony of Jacqueline Davis. The Commonwealth presented the testimony of Mary Ann Hill,

4

the wife of the decedent, and a stipulation regarding certain records of the parole agent for Ms. Davis.

### 1. Testimony of Jacqueline Davis

Davis testified to the following version of the events related to the murder. She met defendant in the early morning hours of April 8, 1995, and he asked her to accompany him to a speakeasy, as "every time [he] come down here…they try to do something to [him]." N.T. 10/20/15 at 13-14. Defendant was then in possession of a bat so that "if they jump[ed] [him]" he could hit them with the bat. N.T. 10/20/15 at 14. They arrived at the speakeasy, and defendant then left to take a girl named Althea home. N.T. 10/20/15 at 15. After defendant left, Tyrone Hill, the decedent, and two men identified as Frank and Ritchie came to the speakeasy looking for defendant. N.T. 10/20/15 at 15-16. Defendant returned to the speakeasy, with a person who introduced himself as "Karate." Davis then told defendant that the three men were looking for him. N.T. 10/20/15 at 16-17, 45. Defendant got into a physical confrontation with Ritchie, after which defendant was kicked out of the speakeasy. N.T. 10/20/15 at 17.

According to Davis, she and a few other patrons went upstairs to the second floor of the speakeasy and looked out the window, where she saw defendant and "Karate" standing on the street next to a telephone pole. N.T. 10/20/15 at 17-18, 69. Davis saw a car, driven by the decedent, pull up next to defendant, and saw defendant go to the car window, state that he was tired of being messed with, and punch the decedent. N.T. 10/20/15 at 18. Davis then saw "Karate" step out from behind the telephone pole and shoot the decedent. N.T. 10/20/15 at 18-19, 70-71. After "Karate" shot the decedent, defendant said "Oh, my God, why you do that? Why you do that?" N.T. 10/20/15 at 19-20. Both defendant and "Karate" then fled the scene. N.T. 10/20/15 at 19-20. Davis later met with the decedent's wife, Mary Ann Hill, and told her

5

that she saw "Karate" kill her husband. N.T. 10/20/15 at 104-106. According to Davis, after defendant's convictions in this matter, she did not come forward with her testimony because her parole agent "told [her] to stay out of it." N.T. 10/20/15 at 24, 29. Davis later provided a statement to private investigator Wayne Schmidt on August 31, 2013. N.T. 10/20/15 at 27-29, 151-156, 169-170. Davis also admitted to using crack cocaine and heroin at the time of the homicide. N.T. 10/20/15 at 31-32.

### 2. Testimony of Defendant

Defendant testified as follows. He claimed that, at the time of the trial, he was unaware of Davis' helpful potential testimony, and was not able to call Davis to testify. N.T. 10/20/15 at 178. He first learned of Davis' possible testimony sometime in 2009 and attempted to reach out to people who knew her. N.T. 10/20/15 at 178. While he was not able to get a statement from Davis, he did obtain letters from people who claimed to have heard Davis' helpful version of the shooting. Defendant subsequently hired an investigator in late 2013 to contact Davis. N.T. 10/20/15 at 178-179. Defendant claimed to know the person "Karate" referred to by Davis, and that "Karate" was a person who lived in the same neighborhood as defendant. N.T. 10/20/15 at 182. However, defendant did not know where "Karate" was, had no contact with "Karate," and did not know if he was alive. N.T. 10/20/15 at 182.

On cross-examination, defendant acknowledged that he had talked to his cousin, Edward Williams, who probably mentioned prior to 2009 that Davis was a helpful witness. N.T. 10/20/15 at 190-191, 193. Defendant also acknowledged that in 1999, he had mentioned that Davis could be a helpful witness to attorney Jeffrey Minehart, who was defendant's attorney for the first PCRA petition. N.T. 10/20/15 at 194-195. Defendant also remembered receiving a letter from Mr. Minehart, indicating that Mr. Minehart had attempted to contact Davis through an

6

investigator, but that Davis "would make excuses as to why she was not available." N.T. 10/20/15 at 203-204.

### 3. Testimony of Mary Ann Hill

Mary Ann Hill testified that she was the wife of Tyrone Hill, the decedent. N.T. 10/20/15 at 243. Hill directly contradicted the testimony of Davis regarding Hill's conversation with Davis after the murder. In particular, Hill testified that, while preparing the funeral arrangements for her husband, Davis came to her and told her that defendant had shot and killed her husband. N.T. 10/20/15 at 245, 247. Hill further testified that Davis never told her that "Karate" was responsible for the death of her husband, and that she did not know anyone named "Karate." N.T. 10/20/15 at 248-249.

### 4. Stipulation regarding parole records of Davis

The parties stipulated that the parole records for Ms. Davis include a handwritten entry from her parole agent, dated September 1, 2000, in which he recorded that he received a phone call from an investigator for defendant who thought that Davis may have information about defendant's case. The agent further noted that he spoke with Davis about this and that "she does not remember the details and does not want to talk to [the investigator]." N.T. 10/20/2015 at 235-236.

### *B. Findings of Fact and Conclusions of Law*

1. The Court finds that defendant's testimony was not credible. In particular, the Court finds that defendant knew Davis was a potential witness prior to defendant's trial, as Davis was with defendant in the speakeasy just prior to the murder that took place in front of the speakeasy.

2. The Court finds that defendant failed to exercise due diligence to secure Davis' presence as a witness at trial. Specifically, defendant failed to make efforts to contact or

7

interview Davis prior to trial. In addition, defendant unquestionably knew that Davis would provide exculpatory testimony no later than 2003, when Mr. Minehart drafted his *Finley Letter* in response to defendant's first PCRA petition, and mentioned that defendant claimed that Davis was an exculpatory witness. Six years later, when defendant filed his Second Petition in 2009, and presented Davis as an exculpatory witness, he failed to provide either an affidavit from Davis, or even a certification of her expected testimony to support his petition, relying only on hearsay. By the time defendant filed the Third Petition here at issue, nearly 10 years had passed since attorney Minehart's Finley letter demonstrated defendant's knowledge of Davis as a witness. Without question, defendant failed to sufficiently follow up during this period of time to secure Davis as a witness.

3. Accordingly, defendant failed to demonstrate that he exercised reasonable diligence in obtaining Davis' statement or testimony. Therefore, his claim must fail as defendant did not prove an exception to the PCRA time-bar. *Lambert*, 765 A.2d at 324-25.

4. In addition, even had defendant been able to establish that Davis' testimony would qualify as newly discovered evidence sufficient to render his Third Petition to be timely, defendant still would not be entitled to relief, since he could not demonstrate that if she had testified, there would be a reasonable probability that the outcome of the trial would have been different.

5. The Court finds the testimony of Jacqueline Davis to be incredible. In particular, the Court finds that Davis never told Hill that "Karate" shot the decedent. The Court finds that Davis' testimony that she stood behind a closed window on the second floor of the speakeasy, saw "Karate" shoot the decedent, and heard defendant say "why did you do that?" was a fabrication. The Court finds that Davis' statement that her parole agent told her not to speak to

anyone about the murder was completely false and refuted by the agent's records. The Court finds further that Davis fabricated her exculpatory story to assist defendant.

6. The Court finds that the testimony of Mary Ann Hill was credible and established that shortly after the murder, Davis told Hill that she saw defendant shoot the decedent. The Court also finds that Davis never told Hill that she saw "Karate" shoot decedent and that Hill never heard of anyone named "Karate."

7. Accordingly, defendant cannot demonstrate that the outcome of his case would have been different had Davis been presented as a witness, as Davis' testimony was incredible and her story an apparent fabrication.

## IV. ORDER

For all of the foregoing reasons, the Court finds that the Third Petition was untimely filed, and that in any event, the claim raised in the Third Petition is without merit. For that reason, it is hereby ORDERED that defendant's Third Petition is DISMISSED. Defendant is hereby advised that he has the right to file an appeal to the Superior Court of Pennsylvania within 30 days of the date of the entry of this order. *In forma pauperis* status to continue.

BY THE COURT:

GLENN B. BRONSON, J.

9